SONDRA J. LYTLE, f/k/a SONDRA J. SWINGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lytle v. Commissioner
Docket No. 24960-89
United States Tax Court
T.C. Memo 1992-185; 1992 Tax Ct. Memo LEXIS 214; 63 T.C.M. (CCH) 2578; March 30, 1992, Filed *214 Decision will be entered for respondent. J. Raymond Karam, for petitioner. T. Richard Sealy III, for respondent. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1984 in the amount of $ 14,284. The issue for decision is whether petitioner may exclude from her 1984 gross income her community one-half share of Mr. Swinger's income for the portion of 1984 that they were married pursuant to either section 66(a) or (c). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in San Antonio, Texas, at the time of the filing of the petition in this case. She filed an individual Federal income tax return for the calendar year 1984 claiming a filing status of head of household and an amended return for that year with the Internal Revenue *215 Service in Austin, Texas. Petitioner and Mr. Joseph L. Swinger were married on March 6, 1970. They separated in October 1983 and did not reside together thereafter. They were divorced on March 9, 1984. Petitioner and Mr. Swinger had two children who were 13 and 9, respectively, at the time of the divorce. After petitioner separated from Mr. Swinger, she resided in Helotes, Texas (Helotes residence), with her two children. Mr. Swinger made the mortgage payments on the Helotes residence. The Helotes residence was awarded to petitioner under the divorce decree entered March 9, 1984, and under that decree Mr. Swinger was responsible for payment of the indebtedness on this residence. A few months after the entry of the divorce decree, petitioner decided that she did not want to live as far away from San Antonio as Helotes. Mr. Swinger agreed to purchase a residence for her in San Antonio to be exchanged for the Helotes residence. Mr. Swinger purchased a house for petitioner in San Antonio (San Antonio residence). Mr. Swinger made the downpayment on the San Antonio residence and made all mortgage payments on the San Antonio residence. Petitioner and the children moved into the *216 San Antonio residence around August 31, 1984. The San Antonio residence was less valuable than the Helotes residence. On September 10, 1984, Mr. Swinger gave petitioner a check in the amount of $ 26,000, which represented the excess of the value of the Helotes residence over the San Antonio residence. The divorce decree awarded certain properties in addition to the family residence to petitioner and required Mr. Swinger to pay the indebtedness on those properties. Mr. Swinger during 1984 made the following payments on indebtedness on properties awarded to petitioner: monthly payments of $ 35 to $ 40 on real property known as Silver Creek Ranch; monthly payments in excess of $ 100 on real estate in a subdivision known as Oak Village North 3; and monthly payments of several hundred dollars on a Ford truck. Pursuant to the divorce decree, Mr. Swinger transferred to petitioner a 1979 Cadillac, a promissory note from the sale of a former residence, a promissory note from the sale of a houseboat, bank accounts in the aggregate amount of $ 43,750, a pinball machine, a jukebox, and all of the personal property at the Helotes residence. Mr. Swinger made payments referred to as child *217 support payments directly to petitioner in the amount of $ 2,000 per month for every month in 1984. Under the divorce decree he was required to make the $ 2,000-a-month child support payment beginning on March 10, 1984. Petitioner received $ 4,257 in 1984 from her employment by Bristow Co., Inc. (Bristow), a business owned by her father. Federal income tax of $ 484.86 was withheld from her pay, and social security tax of $ 285.22 was withheld. Petitioner was paid at least $ 150 a week by Bristow, and this was increased at some time to $ 250 a week. After petitioner began working for Bristow she continued to work there through 1986. During 1983 and 1984 Commercial Steel was Mr. Swinger's and his family's sole source of income. He had started the business as a sole proprietorship in 1979 and operated it as such until sometime in April 1984 when the business was incorporated. Mr. Swinger at all times from 1979 throughout 1984 exercised substantially all the management and control of Commercial Steel. During 1983 and 1984 petitioner was aware that Mr. Swinger operated Commercial Steel, that it was the family's sole source of income, and that it provided them a nice lifestyle, *218 but at no time did she exercise any significant management or control of the business. The only involvement she had in the business was signing checks that had been made out by others. On his 1984 Federal income tax return, Mr. Swinger only included in his adjusted gross income one-half of his net earnings from Commercial Steel attributable to the period of 1984 during which petitioner and Mr. Swinger were married. Petitioner did not include in her gross income on her 1984 Federarl income tax return any portion of Mr. Swinger's net earnings from Commercial Steel attributable to the period of 1984 during which they were married. In the notice of deficiency, respondent increased petitioner's income as reported by $ 52,002 by allocating to petitioner her share of community property income, deductions, partnership loss, investment tax credit, and recaptured investment tax credit resulting from Mr. Swinger's income-producing activities attributable to the period of 1984 during which petitioner and Mr. Swinger were married. OPINION Section 66(a) provides that if: (1) Two individuals are married to each other at any time during a calendar year, (2) live apart at all times during the *219 calendar year, (3) do not file a joint return for that year, (4) one or both of such individuals have earned income for the calendar year which is community income, and (5) no portion of such earned income is transferred, directly or indirectly, between the individuals prior to the close of the calendar year, any community income for the calendar year shall be treated in accordance with section 879(a). Here, if section 66(a) is applicable to petitioner, the community income which respondent has determined is taxable to her would not be taxable to her but would be taxable to Mr. Swinger. Section 66(a) was enacted by section 101 of the Miscellaneous Revenue Act of 1980, Pub. L. 96-605, 94 Stat. 3521. According to the Committee Report, the reason it was enacted was: Under present law, an abandoned spouse may be liable for Federal income tax on one-half of the community income earned by the other spouse even though the abandoned spouse has not actually received or benefited from any of the income. The committee believes that in these circumstances a spouse should not be taxed on community income earned or received by the other spouse.
H. Rept. 96-1278 (1980), 1980-2 C.B. 709, 711. *220 Clearly petitioner was not an "abandoned" spouse in the ordinary sense of the word "abandoned". Mr. Swinger made the mortgage payments on the house she lived in, paid $ 2,000 directly to her each month after the separation in 1983, which after the divorce decree was entered was designated as child support, and made payments on a truck and other property which was awarded to her by the divorce decree. However, the statute does not refer to an "abandoned" spouse but is specific that if the conditions set forth in the statute are met certain community income is taxable in full to the spouse generating the income, and no portion is taxable to the other spouse. The record is clear that petitioner and Mr. Swinger were married during 1984 until their divorce on March 9, 1984. The record also shows that they lived apart at all times during 1984 and that they did not file a joint income tax return for 1984. The record also shows that Mr. Swinger earned income during January 1 through March 9, 1984, which was community income. Therefore, the only issue with respect to the application of section 66(a) is whether any portion of Mr. Swinger's earned income for the period January 1 through *221 March 9, 1984, was transferred to petitioner at any time during the year 1984. Respondent contends that petitioner has not shown that no portion of the $ 26,000 transferred to petitioner on September 10, 1984, was not income earned by Mr. Swinger while he and petitioner were married. Respondent also contends that the payments of $ 2,000 a month to petitioner in January and February 1984 have not been shown not to be from earnings during that time and that the record shows that at least a portion of this amount was used for petitioner's benefit. Respondent also contends that petitioner has not shown that the payments of the mortgage on the house in which petitioner lived and payments on properties transferred to her by the divorce decree were not from Mr. Swinger's earnings during the period January 1 through March 9, 1984. Petitioner testified that she believed that the $ 26,000 came from funds earned before 1984. She offered no support for this testimony and later testified that she assumed the $ 26,000 payment was from money earned before 1984, but was not certain because she was not involved in Mr. Swinger's business in any way. Because she had no knowledge on which to base *222 her statements, we do not accept her testimony as to the source of the $ 26,000. Mr. Swinger testified that he did not know if the $ 26,000 came from current or accumulated earnings. Since the owner and operator of the business was uncertain as to when the money was earned, testimony by one not involved in the business is unpersuasive. Petitioner also argues that the payment of $ 26,000 was "for value" and, based on the legislative history of section 66(a), transfers for value are not to be taken into account when determining if income was transferred, directly or indirectly, between the individuals prior to the close of the calendar year. Petitioner has misinterpreted the legislative history. In explaining section 66(a), the committee report states: For purposes of the latter income transfer test, the committee intends that transfers of de minimis amounts or value are not to be taken into account. * * * H. Rept. 96-1278 (1980), 1980-2 C.B. 709, 711. The legislative history indicates that Congress intended to except transfers of de minimis value. Nowhere in the legislative history or the Code provision itself is there any indication that Congress *223 intended to except transfers for value. Respondent argues that, because petitioner had no other source of income during the early part of 1984, the payments of $ 2,000 monthly made to her by Mr. Swinger were used in part for her support. She concludes that some portion of the $ 2,000-a-month payments, referred to as child support, should be considered as direct payments to petitioner from Mr. Swinger. Petitioner testified that the $ 2,000 a month was used solely for the support of the children and that none of it was used for her support. She argues that the child support payments should not be considered as payments to her. Respondent agrees that an amount used totally for child support should not be considered a transfer to petitioner under section 66(a), but contends that at least during the period January 1 through March 9, 1984, petitioner used a portion of the $ 2,000 monthly payments for her own support. Petitioner testified that she was employed by Bristow during 1983 and 1984 and used the income from this employment to support herself. She did not introduce any corroborating evidence establishing that she was employed by Bristow during 1983 or early 1984. The record *224 as a whole makes it clear that petitioner became employed by Bristow in the latter part of 1984, not 1983. Petitioner earned a total of $ 4,257 from her employment by Bristow in 1984. She testified that when she began working, she earned $ 150 a week and later $ 250 a week. She also testified that after she began working for Bristow she continued to work there through 1986. At $ 150 a week petitioner could have worked only a little over 28 weeks during 1984 to receive $ 4,257. Petitioner testified that she was paid every week and that she would deposit the paychecks into her bank account. Her bank account records for the first part of 1984 do not reflect any deposits approximating $ 150 less withheld taxes. It is clear from the record that petitioner did not have income from Bristow during the early months of 1984. Petitioner argues that she used interest income to support herself during 1984. Petitioner has shown no record of any interest which would have been available to her for her support prior to the transfer of assets to her on March 9, 1984, pursuant to the divorce decree. Also, her bank deposit records prior to the divorce do not show any deposits which might have *225 represented interest payments. Based on this record, we find that petitioner used a portion of the $ 2,000-a-month payments which the parties referred to as child support payments for her own benefit during at least part of 1984. Based on this record, we conclude that Mr. Swinger made direct transfers of a portion of the community income he earned during the period January 1 through March 9, 1984, to petitioner in 1984. During 1984 Mr. Swinger made mortgage payments on the Helotes residence while petitioner and the children resided there. He also made mortgage payments on property transferred to her pursuant to the divorce decree, including monthly payments of $ 35 to $ 40 on the Silver Creek Ranch, monthly payments in excess of $ 100 on the Oak Village North 3 real estate, and monthly payments of several hundred dollars on a Ford truck. Mr. Swinger also made mortgage payments on the San Antonio residence. Petitioner argues that because property was awarded to her pursuant to the divorce decree and Mr. Swinger's obligation was not affected or diminished by the award, any payments made were for his own benefit. These payments included mortgage payments on the house in which *226 petitioner and the children were living, both before and after the divorce, and these mortgage payments, we conclude, were for her benefit. The inference is that the payments on the truck and other properties were also for petitioner's benefit. Petitioner has not shown that these amounts were not paid with income earned from January 1 to March 9, 1984. We find that the payments discussed above constitute an indirect transfer to petitioner of community property income. To qualify to exclude community income from her reportable income under section 66(c) petitioner must show that: (1) She did not file a joint return with Mr. Swinger for 1984, (2) she did not include in her gross income for 1984 an item of community income properly includable therein which, in accordance with section 879(a), would be treated as the income of Mr. Swinger, (3) she did not know, and had no reason to know, of the item of community income, and (4) taking into account all facts and circumstances, it is inequitable to include such item of community income in her gross income. If all four prerequisites are satisfied, the item of community income is includable in the income of Mr. Swinger. Petitioner did *227 not file a joint return with Mr. Swinger for 1984. She has satisfied the first prerequisite. Section 879(a) treats trade or business income as provided in section 1402(a)(5). Section 1402(a)(5) provides that if -- (A) any of the income derived from a trade or business (other than a trade or business carried on by a partnership) is community income under community property laws applicable to such income, all of the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the husband unless the wife exercises substantially all of the management and control of such trade or business, in which case all of such gross income and deductions shall be treated as the gross income and deductions of the wife; * * *
The income from Commercial Steel is properly attributable under section 879(a) to Mr. Swinger because petitioner was not involved in the business. Accordingly, the second prerequisite is satisfied. Whether a spouse knows or has reason to know of an item of community income is essentially factual. The test to be applied in determining whether a spouse "has reason to know" of an item of community income is *228 what a reasonably prudent person would or should know under the circumstances, keeping in mind such person's level of intelligence, education, and experience. See Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. on this issue and revg. on another issue T.C. Memo. 1984-310. Petitioner argues that she relied upon reports to her in 1983, soon after she and Mr. Swinger separated, by employees of the business that the business was having financial difficulties. If petitioner in fact had a belief that the business was having financial difficulties such belief is insufficient to show that she did not know and had no reason to know that the business was producing income during the first part of 1984. Since petitioner knew of the business activity it was incumbent on her, at least, to attempt to obtain from Mr. Swinger or his accountant information as to whether the business was producing income. Based on the evidence in this record we conclude that petitioner knew of Mr. Swinger's business activity as it had been their sole source of income during the years she was married to Mr. Swinger and she knew of the circumstances surrounding the *229 income it produced. Contrary to her testimony that she believed the business was having financial difficulties she knew that Mr. Swinger, whose sole source of income was Commercial Steel, was able to make the $ 2,000-a-month payments to her and mortgage payments on her property during all of 1984. Accordingly, the third prerequisite of section 66(c) is not satisfied, and petitioner has not met the requirements of section 66(c) so as to be entitled to exclude community income for January 1 through March 9, 1984, from her reportable income. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, unless indicated otherwise.↩